UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KEVIN TUBBS, JOSEPH DIBEE, JOSEPHINE S. OVERAKER, JUSTIN SOLONDZ, and BRIANA WATERS,<br><br>Defendants. | Case No. CR05-5828FDB<br><br>ORDER DENYING AS PREMATURE WATERS' MOTION TO DISMISS COUNT 7 OF THE FOURTH SUPERSEDING INDICTMENT<br><br>(Dkt. # 171) |

Defendant Briana Waters moves for dismissal of Count 7 of the Fourth Superseding Indictment based upon lack of federal jurisdiction and the Tenth Amendment. Briana Waters is charged in Count 7 with violation of 18 U.S.C. § 844(f)(1), which provides as follows:

> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other personal or real property in whole or in part owned or possessed by, or leased to, the United States, or any department or agency thereof, or any institution or organization receiving Federal financial assistance, shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both.

Waters argues that although Congress enacted this provision to address bombings at state universities, Congress' authority runs up against issues state sovereignty issues and the Tenth Amendment, which reserves to the States powers not delegated to the United States by the

ORDER - 1

1  Constitution.  Waters relies primarily on *United States v. Brown*, 384 F. Supp. 1151 (E.D. MI 1974),
2  *reversed on other grounds*, 557 F.2d 541 (6th Cir. 1977), a case involving the bombing of a Planned
3  Parenthood Clinic in Detroit, which received funds from the Department of Health, Education and
4  Welfare, which funds amounted to one third of its total budget.  The Court noted that Congress
5  made clear that the constitutional basis for Section 844(f) was the Property Clause of the United
6  States Constitution, the purpose of which was to give the government the power to control and
7  govern its own property.  The Court concluded, therefore, that the Property Clause could only be
8  constitutionally used as a basis for jurisdiction if "some actual and substantial property interest of the
9  federal government" was involved.  384 F. Supp. 1157.  The Court found that the federal
10 government had no property interest in Planned Parenthood.  The Court then turned to the
11 Necessary and Proper Clause, giving the Congress power to enact laws necessary and proper for
12 executing "the foregoing powers."  Therefore, the Court concluded that there was no independent
13 grant of power by the necessary and proper clause, merely power to execute those powers granted to
14 it.  The Court concluded, however, that the Necessary and Proper Clause can be seen as a "grant of
15 authority to protect entities which are engaged in governmental functions."  384 F. Supp. At 1159.
16 Thus the Court concluded that

> Congress must have the means to protect those institutions it is currently funding to carry out federal programs ... .  While actively using and funding such instrumentalities Congress should be able to protect them with criminal sanctions from destruction or loss by direct, violent action, *i.e.*, the use of explosives.  Section 844(f) is not unconstitutional.

20 384 F. Supp. at 1160.
21     Waters analogizes from *Brown*, that although Congress wanted to federalize criminal
22 prosecutions of fires like the one at the University of Washington Center for Urban Horticulture and
23 adopted Section 844(f) for that purpose, this effort is unconstitutional.  In Waters' case, the Center
24 for Urban Horticulture at the University of Washington is not federal property, and the Congress
25 may not exercise its power in a way that impairs the States' integrity or their ability to function
26 ORDER - 2

effectively in a federal system, citing *Fry v. United States*, 421 U.S. 542, 547 n.7 (1975). Additionally, Waters argues that Section 844(f) does not contain any minimum amount of federal assistance to trigger federal jurisdiction – contrasted with the $10,000 minimum requirement of the federal bribery statute – nor is there any requirement of a nexus between the building that is the target of the arson and the federal financial assistance.

The Government responds that Waters is not entitled to challenge the statute on the ground that it might be overly broad (unconstitutional as applied to another person) *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973), but only that it is unconstitutional as applied to her, and her motion should be denied for two reasons:

(1) it is premature, because resolution depends upon evidence that is almost identical to evidence that will be presented at a trial on the merits. *See, e.g., United States v. Lunstedt*, 997 F.2d 665, 667 (9th Cir. 1993)("[a] district court cannot grant a motion to dismiss an indictment if the motion is 'substantially founded upon and intertwined with evidence concerning the alleged offense'"; the district court may only grant the motion if it depends upon evidence that is "entirely segregable from the evidence to be presented at trial" {quoting *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986). Fed. R. Crim. Pro. 12(b) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the Court can determine without a trial of the general issue." To obtain a conviction under 18 U.S.C. § 844(f), the United States will have to prove that the University of Washington is an "institution or organization receiving Federal financial assistance."

(2) it is without merit, even if the Court were to consider the subject matter of the motion, which, the United States maintains it should not. Courts that have considered the issue have found constitutional authority for 18 U.S.C. § 844(f) in the Necessary and Proper Clause of Article I, Section 8, Clause 18 of the Constitution. "Congress must have the means to protect those institutions it is currently funding to carry out federal programs if those programs are to be

ORDER - 3

economically or expeditiously carried out." *Brown*, 384 F. Supp. At 1160.  The institution need not be part of government, but need only be effectuating a national program with Federal funds. *Id.* at 1159.  *See United States v. Kimberlin*, 805 F.2d 210, 242 (7th Cir. 1986) where the School Town of Speedway, which provided programs for special-needs students and which received $10,000 of Federal funds for use in special education, suffered property damage. Kimberlin's conviction was sustained, the Court noting that Speedway was "performing the public and federally encouraged function of educating its students in need of special services ... [and] receiving federal financial assistance within the meaning of § 844(f)." *Kimberlin*, 805 F.2d at 242.  In this case, the University of Washington received $552 million in 2001 of Federal grants to carry out a broad assortment of Federal programs, including research programs, and the College of Forest Resources, which occupied the Center for Urban Horticulture, expended more than five million dollars of Federal funds in 2001.

While the Court agrees with the conclusion in *Brown* that "Congress must have the means to protect those institutions it is currently funding to carry out federal programs ... ," 384 F. Supp. at 1160, the Court also agrees that Waters' motion for dismissal of Count 7 for the reason that 18 U.S.C. § 844(f) is unconstitutional implicates the proof of the elements of the charge, including the receipt of Federal financial assistance by the University of Washington.  Accordingly, Waters' motion is premature because its resolution depends upon evidence that will be presented at trial on the merits.

NOW, THEREFORE, IT IS ORDERED: Waters' Motion to Dismiss Count 7 of The Fourth Superseding Indictment [Dkt. # 171] is DENIED as premature.

DATED this 18th day of September, 2007.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 4